UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JEAN AZOR,                                          :

                Plaintiff,                    :

          -against-                       : **REPORT AND RECOMMENDATION**

NEW YORK CITY DEPARTMENT OF             :        10 Civ. 2235 (PAC) (KNF)
CORRECTIONS, OFFICER PELUSO, SHIELD #
10657, OFFICER LIGHTFOOT, SHIELD # 4937,  :
OFFICER R. ANTHONY, SHIELD # 12032,
OFFICER T. CHADBURN, SHIELD # 15419,     :
CAPTAIN N. LANGFORD, SHIELD # 1480,
                                                     :
              Defendants.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Jean Azor ("Azor"), proceeding pro se, commenced this action for damages pursuant to

42 U.S.C. § 1983, alleging the defendants violated his constitutional rights when they assaulted

him, while he was waiting for his parole hearing "in the holding-pen area," on Rikers Island.

Azor asserted he sustained concussions, a laceration above his right eye and a nose fracture.

Before the Court is Azor's motion for summary judgment, made pursuant to Rule 56 of

the Federal Rules of Civil Procedure.  In support of his motion, Azor submitted: (a) a notice of

motion; (b) his affirmation in support of the motion; and (c) Local Civil Rule 56.1 statement of

material facts as to which he contends no genuine issue to be tried exists.  The motion is

unopposed.[1]

## EVIDENCE SUBMITTED ON THE MOTION

On February 3, 2010, the city of New York, Department of Correction, Investigations Division, issued an investigation report about a use of force class "A" incident, occurring in a search pen at the Donald Cranston Judicial Center ("DCJC"), involving Azor and Correction Officers Corey Lightfoot ("Lightfoot"), Michael Peluso ("Peluso") and Robert Anthony ("Anthony"). The report identified several staff witnesses and inmate witnesses to the incident, including inmates Saed Kaid ("Kaid") and Alex Adderly ("Adderly"). The report stated the following, in pertinent parts:

> SUBMITTED USE OF FORCE REPORTS:
> Officer Robert Anthony # 12032, Officer Michael Peluso # 10657, and Officer Corey Lightfoot # 4937:
> On February 03, 2010 Officer Anthony was assigned to the Intake "A" Post on the 0900x1715 tour, Officer Peluso was assigned to the Fire Safety Post and Officer Lightfoot was assigned to the Writ Court Expeditor Post within DCJC. At approximately 1015 hours Officer Peluso pedigreed inmate Adderly in the search pen and directed him to go to holding pen # 3 to wait for his Writ Court hearing. Officer Anthony was securing inmate Adderly into pen # 3 when the inmate initially refused stating "something new every fucking week, I'm not going into that fucking pen." After being given direct orders to comply by Officer Anthony inmate Adderly stepped into the pen without further incident. Inmate Azor was standing inside the search pen stating to Officer Peluso #10657 "Fuck that, that's my Muslim brother and I'm going with him" and pushed the search pen door open striking Officer Peluso in the chest. Officer Peluso utilized chemical agents which did not have the desired effect. Officer Anthony activated his PBA # 39. Inmate Azor continued to advance towards Officer Peluso and struck him in the chest and face. Officer Peluso struck the inmate in upper body and facial area. Officer Anthony gave inmate Azor direct orders to cease his aggression and began pushing inmate Azor towards the rear of the pen. Inmate Azor threw punches striking Officer Anthony's face and chest

---

[1] On April 18, 2012, the defendants' counsel submitted a letter to the Court, contending that the plaintiff failed to comply with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1 and requesting that the motion be denied. The defendants failed to respond to the plaintiff's motion in accordance with Local Civil Rule 7.1.

area.  Officer Anthony, to defend himself and stop inmate Azor's aggression, threw punches to the inmate's upper body and facial area.  Officer Anthony attempted to apply an upper body control hold to inmate Azor causing Officers Anthony and Peluso and inmate Azor to fall to the floor.  Officer Anthony gained control of the inmate's left arm and Officer Peluso continued giving the inmate orders to stop resisting.  After hearing a commotion Officer Lightfoot #4897 entered the area from the Writ Court Desk and witnessed the use of force.  Officer Lightfoot ordered inmate Kaid out of the pen.  Officer Lightfoot was able to apply mechanical restraints to the wrists of inmate Azor.  The RMSC Probe Team responded and escorted inmate Azor into the shower for decontamination.

* * *

INVESTIGATION DIVISION INMATE STATEMENTS:
Inmate Azor, Jean . . . :
At approximately 1704 hours on February 3, 2010, within the confines of GMDC 1TB, Investigator Peralta obtained the following statement . . . : "Today after 10am I was in writ court when I had a disagreement with an officer over a cell.  They are suppose to put us in a separate cell.  While I was talking to one officer, short, stoky [sic] brown skin and then an officer came from behind him and sprayed me.  After that about four or more officers started beating me punching me all over my temple.  I think they hit me with the radio they punch me in my head.  One officer his name was Ellis I know he was by the gate but I don't remember him hitting me.  I didn't go to the hospital only to the clinic I feel like I have internal bleeding.  One inmate from NIC was there that I remember I have injuries to my arm, temple, right eye and left knee and belly."

INVESTIGATION DIVISION INMATE WITNESS STATEMENTS:
Inmate Adderly, Alex B&C . . .
At approximately 1803 hours on February 3, 2010, within the confines of GMDC 7 Upper, Investigator Sewer obtained the following statement: "Today around 10:20 and 10:30 at JACT Ric court Officer Nieves was calling inmates out of the cell area to be searched.  Nieves wanted all of the inmates to go into one cell; I told Officer Anthony if we could go into another cell because the other one was crowded.  Officer Nieves became belligerent and unprofessional and had threatening body language.  Officer Nieves said you don't run shit here and pulled out his mace and sprayed into the cell.  There were 3 inmates in the cell, Jean Azor, Saheed Kadeem and I wasn't sure of the other inmate's name (older with grey and black moustache, black).  Officers Anthony, Nieves, and another officer ran into the cell (light skin black officer with sh[o]rt hair).  The[y] tried to restrain Azor, they jumped on him and cuffed him.  They stomped on him when he was cuffed.  I told Officer Hawkins to go and stop them from jumping him.  There was a cell with approximately 25 inmates they didn't see anything because it was too far and on the same side.  Only me and the 2 other inmates saw what happened."

* * *

Inmate Kaid, Saeed B & C . . .

At approximately 1833 hours on February 3, 2010, within the confines of NIC Dorm 2B, Investigator Peralta obtained the following statement . . . : "Today I was in writ court like at 11 AM.  Around that time, I was in a holding pen, they called me along with two other inmates to come out.  One inmate who was the friend of the other inmate (the one with dreads was in the cell with me) the tall bald black skin inmate & dreads are friends.  The bald got into a verbal argument with the CO's about 3 of them.  That's when they told me and the dread inmate to go into the pen.  The bald inmate was outside pen too, the same side of the pen but from his angle he can't see what goes on in the pen.  I couldn't see the bald inmate anymore.  The dread inmate got into an argument with the CO (Spanish guy, heavyset 5'9" - 5'10), Ceasr haircut, black hair, lightskin) then the Spanish CO came to the pen door and said what you saying now.  They were going back and forth.  At this point, it was me & dread in the cell, dreads said the bald guy was his dude.  CO said [s]hut up & sit down.  Dread said shut up and close the pen.  CO & him kept going back & forth saying about going into the pen.  Then two more CO's came then the Spanish CO came into the pen, then the dread kid back up.  Spanish CO mased the dread kid then they bummed rushed him.  Then the CO mase me too but neutralize the situation.  I bent down then a CO came to restrain me, but I didn't get hurt.  I believe they did it to control the situation because if they wanted to hurt me they would have hurt me.  After they mase him, the dread inmate went down to the ground bending down then they bum rush him, then they all started fighting.  I was still in the pen 2 CO's on the dread inmate, so there was about 5 CO's in there.  I don't (know) the CO's & the inmates names.  I went to the clinic afterwards for my eyes.  I go home Feb. 22 hopefully."

According to the report, Azor was seen at the clinic at "1139 hours," for "less than 1 hour."

Azor's injuries were recorded as follows in the report: "Injury to the right side of face (brow region), left elbow, left hand and forearm, right upper arm."  Officer Anthony sustained a left-eye contusion and a fracture of his pinky finger; he was transported to Mount Sinai Hospital of Queens.  Officer Peluso was also transported to Mount Sinai Hospital of Queens; he sustained right-knee and right-hand contusions.  The report noted that "[t]he area of occurrence is not under recorded video surveillance."  The report concluded that "[m]edical documentation is more consistent with staff[']s version of events than that of inmates [sic] Azor," and the officers involved "acted appropriately and within the guidelines."  The report recommended that the case

4

be closed and no charges be brought.

As a consequence of the February 3, 2010 incident, Azor was issued a misbehavior report for violating prison disciplinary rules. At the subsequent disciplinary hearing, he was found guilty and sanctioned with 110 days in segregation. Azor served 109 days in segregation.

Azor filed an Article 78 petition in the New York State Supreme Court, Bronx County, Criminal Division, claiming that: (i) the Rikers Island Correctional Facility violated Department of Correction's regulations when, during his disciplinary hearing, the hearing examiner failed to ascertain why an inmate witness requested by Azor did not appear; and (ii) his due process rights were violated, when the hearing examiner refused to show Azor documentary evidence admitted at the hearing. On July 6, 2010, the court determined that Azor's rights to call witnesses and due process were violated and expunged Azor's guilty determination from the record.

Thereafter, Azor was indicted on various charges. At his trial, conducted in Bronx County in September 2011, Azor was found guilty on two counts of third-degree attempted assault and sentenced to 45 days on each count.

Azor states, in his affidavit, that pursuant to Department of Correction policy an inmate arriving at the intake area, "once he is processed, . . . is sent to a cell which states the housing location he came from." According to Azor, in violation of this policy, the defendants directed him to a cell in which he did not belong, containing gang members. Azor recalls that he told the officers: "Different housing locations must proceed to cells for those housing units," prompting Peluso and Anthony to appear in the search cell where he was located. Azor alleges that Peluso and Anthony opened the door of the search cell where he was located, words were exchanged and an altercation ensued. Azor states that he has dreadlocks and practices Rastafarian beliefs.

Azor states in his affidavit that no threat, disturbance or attempt to interfere with the

5

order of the facility was made by him; rather, he attempted to avoid engaging in disputes with

the gang members in the cell into which he was to be placed, knowing that he did not belong

there.  According to Azor, once the officers realized he did not intend to enter the cell which

held the gang members, he was attacked with mace, and he defended himself until he was

subdued with blows and kicks.  Azor states that after he was decontaminated, he did not receive

medical attention; instead, he was taken to his cell, despite his "bloodied condition, injuries and

pain," while the officers received immediate medical attention.  He maintains that no medical

report exists that corroborates an injury to an officer's chest.  According to Azor, Captain N.

Langford was not mentioned in the investigation report, but she failed to monitor and act to

remedy the situation.

## LEGAL STANDARD

Summary judgment is appropriate where the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing

law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A

"dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Id.  The moving party "bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); see Fed. R. Civ. P.

56(c)(1).  In determining whether a genuine issue as to any material fact exists, a "district court

is required to resolve all ambiguities and draw all factual inferences in favor of the party against

whom summary judgment is sought." St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000).

Additionally, "the court is not entitled to weigh the evidence" and "if there is any evidence in the

record from any source from which a reasonable inference could be drawn in favor of the

nonmoving party, summary judgment is improper." Id.  "Assessments of credibility and choices

between conflicting versions of the event are matters for the jury, not for the court on summary

judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

A claim that excessive force was used on a prisoner by prison officials is analyzed under

the Eighth Amendment's ban on cruel and unusual punishment.  See Wright v. Goord, 554 F.3d

255, 268 (2d Cir. 2009).  To establish a claim of cruel and unusual punishment under the Eighth

Amendment, a plaintiff must show that: (1) the defendant acted with the necessary level of

culpability; and (2) the alleged wrongdoing was objectively harmful enough to establish a

constitutional violation.  See id.  The first element of a claim that prison officials used excessive

force, the wantonness issue, "turns on 'whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Id. (quoting

Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999 (1992)).  The second element "focuses

on the harm done, in light of 'contemporary standards of decency.'"  Id. (quoting Hudson, 503

U.S. at 8, 112 S. Ct. at 1000).

## APPLICATION OF LEGAL STANDARD

Although it is undisputed that, on February 3, 2010, Azor was involved in an altercation

with prison officials, resulting in injuries to some of the participants, the record contains facts

material to each element of Azor's Eighth Amendment claim about which a genuine dispute

exists.  The evidence submitted by Azor, in support of his motion, recounts different versions of

the events that occurred on February 3, 2010.  According to Azor, "Officers Peluso and Anthony

7

appeared at Plaintiff's location, they opened the door, words continued to be exchanged about the overcrowded cell, pushing, shoving, punches began to land on plaintiff, including being hit in his face with a Radio." According to the investigation report, the officers recall that Azor "pushed the search pen door open striking Officer Peluso in the chest." Whether Peluso and Anthony "opened the door" or Azor "pushed the search pen door open striking Officer Peluso" is material to determining whether force was applied by the prison officials "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wright, 554 F.3d at 268. It is also material to determining whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. See id.

Similarly, the officers' version of the events suggests that Azor left the search cell where he was located by pushing the search pen door open and striking Peluso, because he wanted to join his "Muslim brother," Adderly, in the cell where Adderly was placed. Azor's version of the events suggests that he was reluctant to leave the search cell because he did not want to be in Adderly's cell as it held gang members, and that is why the officers opened the door of his cell and entered it to remove him by force. Whether Azor volunteered to join Adderly in the cell where Adderly was placed or he resisted being taken to that cell is material to determining the elements of Azor's Eighth Amendment claim. Since the Court is not entitled to weigh the evidence, and there is evidence in the record from which a reasonable inference could be drawn in favor of the defendants, summary judgment is improper. See St. Pierre, 208 F.3d at 404. Furthermore, the parties' credibility and choices between conflicting versions of the events are matters for the jury to decide. See Rule, 85 F.3d at 1011. Therefore, since genuine disputes regarding material facts exist, the plaintiff is not entitled to summary judgment.

## RECOMMENDATION

For the foregoing reasons, I recommend that the plaintiff's motion for summary judgment, Docket Entry No. 52, be denied.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review*. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      May 30, 2012

Respectfully submitted,

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Jean Azor
Lisa M. Richardson, Esq.

9